Sam F. Papania v. Commissioner.
Papania v. Commissioner
Docket No. 55893.
United States Tax Court
T.C. Memo 1957-41; 1957 Tax Ct. Memo LEXIS 211; 16 T.C.M. (CCH) 179; T.C.M. (RIA) 57041; March 13, 1957
*211 Held: The Commissioner failed to prove that the petitioner's tax returns for the years 1941 through 1948 were false and fraudulent with intent to evade tax. William H. Beck, Esq., Security Trust Building, Lexington, Ky., for the petitioner. Lyman G. Friedman, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in the petitioner's income taxes for the years 1941 through 1948 and victory taxes for the year 1943, and made additions to the tax, for fraud, for those years, as follows: Addition
to Tax Sec-
Year
Deficiency
tion 293(b)
1941
$ 150.62
$ 75.31
1942
9,713.31
4,856.66
1943
10,301.29
5,103.69
1944
8,753.56
4,376.78
1945
7,396.82
3,698.41
1946
2,840.63
1,420.32
1947
3,837.29
1,918.65
1948
8,205.03
4,102.52
The statute of limitations bars the Commissioner in each year unless the Commissioner proves that the returns filed were false and fraudulent with intent to evade tax. The fraud issue only is decided herein. Findings of Fact The petitioner, Sam F. Papania, is an individual who resided in Hazard, Kentucky, during *212 the years 1941 through 1948. He filed his income tax returns for those years with the then collector of internal revenue for the district of Kentucky. During the years 1941 through 1948 the petitioner operated a jewelry store in Hazard. In his tax returns for those years he reported gross receipts from the jewelry business, and net income, as follows: Gross
Year
Receipts
Net Income
1941
$13,612.97
$1,825.66
1942
16,483.42
2,549.51
1943
18,017.54
2,891.18
1944
20,043.68
4,399.16
1945
26,011.12
6,433.16
1946
27,288.95
6,160.66
1947
22,844.99
498.84
1948
18,010.15
356.60 The gross receipts mentioned above were in agreement with such books and records as the petitioner maintained and were in agreement with his deposits in The People's Bank at Hazard. The petitioner also maintained a bank account at the Bank of Commerce in Lexington, Kentucky. The deposits in that account could not be tied into the gross receipts reported by the petitioner from his business or with his income tax returns. The cash deposits to that account during the years 1942 through 1948 were as follows: Year
Deposits
1942
$ 8,025.12
1943
4,505.17
1944
14,415.48
1945
1,000.00
1946
500.00
1947
870.80
1948
10,700.00
*213 During the years 1941 and 1942 the petitioner made 24 small loans at The People's Bank in Hazard, to finance inventory purchases for his jewelry store. The loans totalled $2,170.50 in 1941 and $3,135.13 in 1942. During the taxable years the petitioner purchased United States Government bonds in his own name, and in his own name "or" his father's name, mother's name, brother's name, sister's name, or wife's name. The amount of such bonds on hand at the close of each of the years 1940 through 1948 was as follows: Year
Amount
1940
1941
$ 1,800.00
1942
25,193.75
1943
46,843.75
1944
69,945.00
1945
38,056.25
1946
38,056.25
1947
32,468.75
1948
32,956.25
During the years 1943 through 1948 the petitioner received $1,853.25 interest on the above-mentioned bonds which he did not report on his tax returns. The Commissioner rejected the petitioner's computation of income for the taxable years in question per his books and recomputed the petitioner's income by the increase in net worth method. The petitioner's net income as determined by the Commissioner and the resulting understatement of net income (alleged), for the years 1941 through 1948, is as follows: *214 Alleged Under-
Net Income per
statement of
Year
Determination
Net Income
1941
$ 3,233.68
$ 1,408.02
1942
25,798.09
23,348.58
1943
25,325.54
22,434.36
1944
24,657.36
20,258.20
1945
21,300.90
14,867.75
1946
13,180.25
9,408.53
1947
13,986.64
13,487.80
1948
24,238.36
23,881.76
In compiling the net worth statement the Commissioner used the petitioner's bank records and tax returns, information from the Bureau of Public Debt and the district director of internal revenue for the district of Kentucky, agreement with the petitioner's accountant as to the amount of accounts receivable and accounts payable, various deed records, and certain other information supplied to him by the petitioner. The only items in dispute were jewelry store inventory at January 1, 1946, jewelry store furniture and fixtures at January 1, 1946, and the amount of cash, if any, received by the petitioner from his father during the taxable years or prior thereto. The petitioner's tax returns showed jewelry store inventory to be $3,226.48 at December 31, 1945. The Commissioner used this figure in compiling his net worth statement. The petitioner introduced into *215 evidence his inventory sheets which showed his jewelry store inventory to be $10,816.95 at that date. The petitioer's tax returns for the years 1944 through 1947 did not show any amount for jewelry store furniture and fixtures, however, the 1942, and 1943 returns showed $500 as the amount, and accordingly the Commissioner used $500 in the net worth statement, for the years 1943 through 1947. The petitioner introduced into evidence his inventory sheets which showed his jewelry store furniture and fixtures to be $3,011 at January 1, 1946. The Commissioner, in the net worth statement, made allowance for $1,990.43 cash in bank at December 31, 1940. He made no allowance for cash on hand at December 31, 1940, or for cash on hand at the end of the years 1941, 1942, 1943 and 1944. However, $50,170 was shown as cash on hand at December 31, 1945, which was explained as the proceeds received by the petitioner upon redemption of United States bonds ($33,370) and sale of certain real property in Louisville, Kentucky ($16,800), during the year 1945, which proceeds could not be traced into any other assets. The statement also showed $76,050 cash on hand at December 31, 1948, which amount was *216 determined from currency deposits made early in the year 1949. Cash on hand at the end of the years 1946 and 1947 was shown on the net worth statement to be $60,000 and $70,000, respectively, which was an increase of cash on hand in the amount of $9,830 for the year 1946 and an additional $10,000 for the year 1947. These increases were arbitrary. The petitioner's father, Onofrio Papania, who lived in Lexington, Kentucky, died in 1943 and left an estate of $20,157.18, which consisted of cash and United States bonds. The district director of internal revenue at Louisville, Kentucky, had no record of any income taxes paid by the petitioner's father. The petitioner's mother, Rose Papania, died in 1944 and left an estate of $1,822. The petitioner received $112,000 from his father by gift or inheritance, during the taxable years and prior thereto, which amount was not given cognizance by the Commissioner in the net worth computation. The Commissioner determined the deficiencies and additions to tax on November 30, 1954. The petitioner's tax returns for the years 1941 through 1948 were not fraudulent with intent to evade tax. Opinion All of the deficiencies are barred by the statute *217 of limitations unless the Commissioner proves by clear and convincing evidence that petitioner's tax returns were fraudulent with intent to exade tax. . The petitioner contends that substantially all of the increase in net worth as computed by the Commissioner is attributable to the receipt by him of approximately $112,000 in cash from his father by gift or inheritance prior to and during the taxable years. To some extent, as the Commissioner argues on brief, "The case, therefore, has resolved itself down to the question of whether the court is going to accept the source of cash story offered by petitioner to explain the difference between net worth increases and income reported." But that is not the whole problem here. The burden of proof is still with the Commissioner. His case to prove fraud rests almost, if not entirely, on the net worth computations and the persistent under reporting of income which they tend to show. As the Supreme Court said, however, in , "Increases in net worth, standing alone, cannot be assumed to be attributable to currently taxable income." And see *218 Here, aside from the net worth computations, where is there other evidence which would support a finding that petitioner had some unreported income which was properly attributable to his earnings? It is uncontroverted that petitioner's sole source of taxable income was his jewelry business. The books of the business were not shown to be false or incomplete in the sense that they contained erasures or reflected false entries or other wilful imperfections. On their face they were complete. Whence, then, came the unreported income? The Commissioner argues that it came from unreported jewelry sales and bases this contention on statements made by petitioner's former wife in a divorce action to the effect that the sales volume of the store was some $700 to $900 per week. This he projects to a volume of $36,400 to $46,800 per year, which is then compared to reported sales ranging from $13,000 to $27,000 per year. We would rather accept the books and what they show with respect to the business income rather than the testimony of the wife in a divorce action where her evident purpose was to receive a favorable settlement or alimony allowance. In substance, petitioner's testimony is that his *219 father transferred approximately $112,000 to him over a period of years. He explained that he was the oldest child and was considered by his father to be the most competent child in the family to handle the money to the best advantage for all. Accordingly, his father transferred the family estate to him. Petitioner also testified that he used part of the money thus received from his father to make advances to other members of his family during the taxable years and to purchase United States bonds in the names of himself "or" other members of the family so that in case of his death the bonds would go to them; further, that he forgot or overlooked reporting the interest income from the bonds in his tax returns. The testimony of petitioner's brother and that of another witness who was a handyman at the jewelry store for many years, tend to substantiate the petitioner's "cash story." His brother testified that his father turned over about $98,000 to Sam prior to his death; that he was present on six or seven occasions when his father gave money to Sam; that one time he personally delivered $6,000 to Sam for his father; and that Sam, being the oldest, was to take care of everything and *220 if he or his sister ever needed money, they were to go to Sam. He also testified that in 1944 or 1945 he saw sums of money in Sam's safe deposit box. The handyman testified that he saw large sums of cash in the safe in the jewelry store as early as 1937 and that in the spring of 1942, while he was working at the jewelry store, he placed $91,000 or $92,000 in Sam's safe. This testimony is not palpably unbelievable and in the absence of any other evidence than the net worth increases put in by the Commissioner, we accept it. We do not think, as the Commissioner contends, that "the story of the cash is so vague and implausible as not to warrant belief." Further, the record shows that the petitioner wrote a letter to his accountant in 1952 in which he stated "My father died December 21, 1943 and I received from him in bonds $19,652.00." The Commissioner relies on this as contradicting petitioner's testimony that he received $112,000 over the years from his father. We interpret the statement in the letter, however, to relate only to the amount of bonds that he received from his father at or after his death, in which case it would not at all contradict the petitioner's testimony that *221 he received $112,000 from his father over the years. The petitioner admitted that he did not report any of the $1,853.25 interest on the United States bonds that he cashed during the years in question, however he testified that this was due to oversight or forgetfulness. The Commissioner introduced no evidence to impeach this testimony. The evidence introduced by the petitioner to show that his jewelry store inventory was $10,816.95 at December 31, 1945, rather than $3,226.48 as shown on his tax return and that jewelry store furniture and fixtures were $3,011 at January 1, 1946, rather than $500 as determined by the Commissioner, have no material effect on the overall increase in net worth as determined by the Commissioner and therefore these items are discussed no further. The evidence, considered as a whole, leaves much doubt as to the existence of any fraudulent intent on the petitioner's part to evade tax. The Commissioner has thus failed to meet his burden of proving fraud and we hold against him on that issue. In view of this holding, the deficiencies determined by the Commissioner are barred by the statute of limitations. It thus becomes unnecessary to decide any issue *222 as to the correctness of the deficiencies as determined. Decision will be entered for the petitioner.